772 P.2d 734

STATE of Idaho, Plaintiff–Respondent,

v.

Juan RODRIGUEZ,
Defendant–Appellant.

No. 17102.

Court of Appeals of Idaho.

April 18, 1989.

Van G. Bishop of Nampa for defendant-appellant.

Jim Jones, Atty. Gen. by Michael A. Henderson, Deputy Atty. Gen., and Robert Wreggelsworth, legal intern; for plaintiff-respondent. Mr. Wreggelsworth argued.

SWANSTROM, Judge.

Juan Rodriguez entered a conditional plea of guilty to possession of a controlled substance, reserving his right on appeal to challenge the district court's denial of his motion to suppress. The controlled substance, cocaine, was found in Rodriguez' possession when he was searched upon his arrest for carrying in his vehicle a concealed weapon. The issue on appeal is whether there was probable cause to arrest Rodriguez on the weapon charge. We conclude that there was no probable cause to believe Rodriguez had committed a crime; therefore, we vacate the judgment of conviction and reverse the order denying Rodriguez' motion to suppress, and remand for withdrawal of plea.

On suppression questions, our review of probable cause determinations is bifurcated. We defer to the lower court's findings of fact when supported by substantial evidence. However, we exercise de novo review over the question whether the facts as found are sufficient to constitute probable cause. *State v. Montague*, 114 Idaho 319, 756 P.2d 1083 (Ct.App.1988). In determining whether probable cause existed, our inquiry turns on whether the officer possessed facts that would lead a person of ordinary prudence to entertain an honest belief that a crime had been committed and that the suspect had committed the crime. *Id. See also State v. Loyd*, 92 Idaho 20, 435 P.2d 797 (1967). When conducting such a review, we take into account the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. *State v. Cook*, 106 Idaho 209, 677 P.2d 522 (Ct.App.1984).

The facts—as developed through the testimony of police officers at the preliminary hearing—are as follows. At about 11:00

p.m., Officer Mattox of the Caldwell Police Department was engaged in surveillance of a Ford Pinto suspected of having fictitious license plates. From his viewpoint approximately a block and a half away, Mattox saw someone enter the Pinto and drive it away. Mattox followed the Pinto to a nearby Circle K store. The driver of the Pinto had already exited the car when Mattox pulled into the store's parking lot directly behind the Pinto. Mattox did not know who the driver of the Pinto was. He looked into the store and saw several customers. Mattox noted that one person in particular seemed to be watching him more than the others. After observing this person for a few minutes, Mattox felt that this person "was possibly the owner of the vehicle or the driver by the way he was observing me."

Sergeant Marsh, also of the Caldwell Police Department, arrived to assist Mattox. Marsh walked to the passenger's side of the Pinto and looked through the side window. From this position Marsh observed the handle of a pistol protruding from underneath the torn fabric of the passenger's seat. Marsh had Mattox come and observe the gun. Marsh then opened the car door and seized the gun. After a few minutes all of the customers in the Circle K had left except Rodriguez—the person who Mattox suspected was the driver of the Pinto. No cars remained in the parking lot except for the Pinto and the police cars. The Pinto was parked approximately eight to ten feet west of the store's front doors.

Rodriguez then left the store carrying a sack and, according to the officers, "approached" or "walked toward" the Pinto. Evidently, any person leaving the store and walking west would pass directly in front of the Pinto. When Rodriguez approached the Pinto, Mattox confronted him and had him place the sack he was carrying on the hood and had him place his hands on the hood. It is unknown how close Rodriguez was to the Pinto when Mattox confronted him. Rodriguez was then handcuffed and arrested for "carrying" a concealed weapon—the gun seized from the Pinto. Incident to the arrest a search of the sack revealed two glass vials containing trace

amounts of cocaine. This formed the basis for the charge of possession of a controlled substance, to which Rodriguez ultimately pled guilty.

Rodriguez filed a motion to suppress the glass vials containing cocaine, arguing that the police did not have probable cause to arrest him for carrying a concealed weapon. In opposition to Rodriguez' motion to suppress, the state presented the following information from Mattox in an affidavit.

That in addition to his testimony at the preliminary hearing, he offers the following additional testimony that occurred at the time the above named defendant was detained at the Circle K in Caldwell on April 3, 1986: that your affiant asked the above named defendant about the ownership of the Ford Pinto automobile from which the gun had been removed by another Caldwell officer, and the defendant replied, "It is not mine, I just borrowed the car."

Rodriguez' motion to strike the affidavit was denied.

After the suppression hearing, the district court made the following determinations concerning probable cause to arrest Rodriguez.

Although Officer Mattox could not identify the person driving the Ford when he followed it to the store, and only suspected that [the] defendant had been the driver, by the time the other officers arrived at the scene none of the other people in the store when Mattox arrived had attempted to leave in the Ford. By the time defendant paid for his purchases and left the store, he was the only customer remaining and the Ford was the only car, other than the police vehicles, in the parking lot. When defendant left the store he walked directly toward the Ford before being detained by the police. At this time, according to Mattox's subsequent affidavit in opposition to the motions, defendant admitted that he had been driving the Ford, but that he had only borrowed it.

Based upon the officers' knowledge that the Ford was displaying fictitious

plates, the discovery of the concealed weapon, and the fact that only defendant appeared to have any interest in leaving in the Ford, an honest and strong suspicion that defendant had driven the Ford to the Circle K under the surveillance of Officer Mattox was well founded. This suspicion was substantiated by defendant's admission that he had borrowed the car.

Thus, the arrest of defendant for carrying a concealed weapon was valid.

The Mattox affidavit, quoted earlier, was the source of the judge's statement that Rodriguez had admitted he was the driver by his "admission that he had borrowed the car." Mattox's affidavit does not specify whether the admission was made prior to or following the arrest. It simply says that Rodriguez made the admission "at the time [he] was detained." The in-court testimony of the officers concerning the sequence of events suggests that Rodriguez made the admission *after* he was arrested. We believe the district court erred in relying upon the admission to show that probable cause existed *before* Rodriguez' arrest.

Assuming, without deciding, that the police had probable cause to believe the crime of carrying a concealed weapon had been committed, they did not possess facts which would give them probable cause to believe Rodriguez committed the crime. The facts possessed by the police were that an unknown person had driven the Pinto to the Circle K store, that Rodriguez had watched the police officers from inside the store, that the Pinto was the only private car left in the parking lot, that Rodriguez was the only customer remaining in the store and that Rodriguez "approached" or "walked toward" the Pinto when he left the store. There is no evidence indicating that Rodriguez approached the driver's door of the Pinto; nor is there evidence suggesting that Rodriguez was attempting

to exercise possession or control over the Pinto. At most, the police had a reasonable suspicion that Rodriguez may have been the driver of the Pinto, which may have justified the officers in briefly detaining and questioning Rodriguez, but not in promptly arresting him. Based on the facts possessed by the officers here, we cannot conclude that a person of ordinary prudence would entertain an honest belief that Rodriguez had committed a crime.

The state has the burden of showing, based on the totality of circumstances, the validity of any warrantless arrest. *State v. Johns,* 112 Idaho 873, 736 P.2d 1327 (1987). Because the evidence offered here is lacking in several critical aspects, we conclude the state has failed to meet its burden. Accordingly, we hold that the facts are insufficient to constitute probable cause for believing Rodriguez had committed a crime.[1] Because there was no probable cause for the arrest, the search of the grocery bag incident to that arrest was not a lawful search. Consequently, the district court erred in denying Rodriguez' motion to suppress.

The judgment of conviction is vacated. Case remanded.

WALTERS, Chief Judge, concurring specially.

I concur in vacating the judgment of conviction but I do so on the ground the police had no basis to arrest Rodriguez on the weapon charge because, in my view, the weapon simply was not concealed. It sufficiently protruded from the seat in the vehicle for the police to immediately identify it as a weapon. Such being the case, it was not a concealed weapon—it was an unconcealed weapon. *See State v. McNary,* 100 Idaho 244, 247, 596 P.2d 417, 420 (1979), holding that "[t]he general test of concealment is whether a weapon is so

---

1. Although there are exceptions not applicable here, generally, an officer without a warrant can lawfully arrest a person for a misdemeanor only when the offense is "committed or attempted *in his presence.*" I.C. § 19–603(1) (emphasis added); *State v. Simpson,* 112 Idaho 644, 734 P.2d 669 (Ct.App.1987). Because we hold that the officers did not have probable cause to believe Rodriguez had committed a crime, we need not discuss Rodriguez' alternative argument that the alleged crime of "carrying a concealed weapon was not committed in any officer's presence."

carried as not to be discernible by ordinary observation."

BURNETT, Judge, concurring specially.

I join in vacating the judgment for the reasons articulated in Judge Swanstrom's opinion. Consequently, I intimate no view regarding the "concealed" weapon issue discussed by Chief Judge Walters.