108 P.3d 424

STATE of IDAHO, Plaintiff–Respondent,

v.

Eric K. GIBSON, Defendant–Appellant.

No. 30255.

Court of Appeals of Idaho.

Feb. 18, 2005.

Molly J. Huskey, State Appellate Public Defender; Justin Michael Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin Michael Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

WALTERS, Judge Pro Tem.

Eric K. Gibson appeals from his judgment of conviction following a conditional guilty plea to possession of a controlled substance, reserving the right to appeal the district court's order denying his motion to suppress evidence. For the reasons set forth below, we reverse the order denying Gibson's motion to suppress and vacate Gibson's judgment of conviction.

## I.

## FACTS AND PROCEDURE

In February 2003, at 2:49 in the morning, an officer with the Twin Falls Sheriff's Office observed a vehicle traveling approximately 33 mph on the right shoulder of the road. The officer watched as the vehicle stopped and the driver and passenger switched places. The officer activated his overhead lights and called for backup. When the officer made contact with the vehicle, he identified Gibson as the occupant who had moved to the driver's seat. The other occupant, who had been operating the vehicle when the officer first observed it, was a fourteen-year-old boy. A second officer arrived on the scene with a certified drug dog. The dog was walked around the outside of the vehicle while Gibson and the passenger were still inside. The dog alerted on the passenger-side door. Following the dog's indication that it detected the odor of controlled substances, Gibson and the lad were removed from the vehicle and patted down for weapons. Gibson appeared agitated and excited. The officers removed items from Gibson's jacket, including his wallet, and placed them in a paper bag. The search of the vehicle did not uncover any drugs. The officers then searched Gibson's wallet and discovered a small baggie containing methamphetamine. Gibson was arrested and charged with possession of a controlled substance. I.C. § 37–2732(c)(1).

Gibson filed a motion to suppress the methamphetamine arguing that, by searching his wallet, the officer impermissibly expanded the automobile search to a search of his person. The district court denied Gibson's motion, finding that the dog's alert gave the officers probable cause to suspect that there were drugs either in the vehicle or on its occupants. Therefore, the district court found that, once a search of the vehicle failed to disclose any contraband, the officers had probable cause to search Gibson. Gibson entered a conditional plea of guilty, reserving his right to appeal the district court's denial of his motion to suppress.

## II.

## ANALYSIS

 The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999). Here the facts are undisputed. Instead, Gibson contends the district court improperly applied the law to those uncontested facts.

On appeal, Gibson argues that probable cause to search his vehicle could not extend to authorization to search belongings found on his person. The state contends that, when the search of the vehicle failed to disclose any controlled substances, the officers had probable cause to believe that the drugs the dog detected were on Gibson's person. Accordingly, the state asserts that the officers had probable cause to arrest Gibson for possession of a controlled substance and that the search of his wallet was lawful as a search incident to that arrest. Gibson argues that the officers did not have probable cause to arrest him. Thus, Gibson contends that the search of his wallet was unconstitu-

tional and that the district court erred in denying his motion to suppress.

### A. Search of Wallet

 Under the automobile exception, police may search an automobile and the containers within it when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 513 (1983). When a reliable drug-detection dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *Gallegos*, 120 Idaho at 898, 821 P.2d at 953. Here, Gibson did not contest the legality of his vehicle's exposure to the dog. Accordingly, when the dog alerted on Gibson's vehicle,[1] the subsequent warrantless search was authorized under the automobile exception.[2]

 The district court held that, once the officers failed to find controlled substances in Gibson's vehicle, the justification to search the vehicle extended to authorization to search Gibson. We disagree with the district court's determination.

 The automobile exception is based both upon the automobile's ready mobility, which is deemed an exigency sufficient to

---

1. The United States Supreme Court has recently held that any intrusion that results from the well-trained dog's sniff of the exterior of a lawfully stopped vehicle does not rise to the level of a constitutionally cognizable infringement of a privacy interest. *See Illinois v. Caballes*, —— U.S. ——, ——, 125 S.Ct. 834, 838, 160 L.Ed.2d 842, (2005).

2. At the hearing held on Gibson's motion to suppress, Gibson stipulated that the dog involved in his case was certified for drug searches and had an excellent accuracy record. Thus, we do not address whether a sufficient foundation had been laid to establish that the dog's alert in this case *ipso facto* established probable cause to

conduct a warrantless search under the automobile exception. *See United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir.1993) (a canine sniff alone can supply probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability); *State v. Howard*, 135 Idaho 727, 731, 24 P.3d 44, 48 (2001) (insufficient foundation laid regarding drug dog's training and reliability precluded the dog's alert from being afforded conclusive weight); *State v. Braendle*, 134 Idaho 173, 175, 997 P.2d 634, 636 (Ct.App.2000) (admission of testimony regarding drug dog's indication requires foundation showing the dog's training and reliability).

excuse the warrant requirement once probable cause for the search is clear, and upon the lesser expectation of privacy in an automobile as compared to the privacy interest in a home. *California v. Carney*, 471 U.S. 386, 390–92, 105 S.Ct. 2066, 2068–70, 85 L.Ed.2d 406, 412–13 (1985); *State v. Bottelson*, 102 Idaho 90, 93, 625 P.2d 1093, 1096 (1981). If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572, 594 (1982). However, occupants of a car continue to have a heightened expectation of privacy, which protects against personal searches without a warrant. *See Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 1302, 143 L.Ed.2d 408, 416 (1999). There exists a "unique, significantly heightened protection afforded against searches of one's person." *Id.* Even a limited personal search intrudes upon cherished personal security and is an annoying, frightening, and perhaps humiliating experience. *Id.* The "traumatic consequences [like those involved in a personal search] are not to be expected when the police examine an item of personal property found in a car." *Id.* Thus, personal searches of vehicle occupants are not authorized under the automobile exception as a result of the occupant's mere presence within a vehicle, which there is probable cause to search. *United States v. Di Re*, 332 U.S. 581, 586–87, 68 S.Ct. 222, 224–25, 92 L.Ed. 210, 216 (1948); *People v. Temple*, 36 Cal.App.4th 1219, 42 Cal.Rptr.2d 888, 891–92 (1995); *State v. Mitchell*, 87 Ohio App.3d 484, 622 N.E.2d 680, 685–86 (1993).

Accordingly, the district court erred in concluding that the automobile exception to the warrant requirement justified the warrantless search of Gibson following the dog's alert and the fruitless search of his vehicle. However, where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct.App.1984). Therefore, we will evaluate whether Gibson's motion to suppress should have been denied on another basis.

## B. Probable Cause for Arrest

 The state concedes that the automobile exception did not provide a basis to search Gibson but, instead, urges that probable cause existed to arrest Gibson for possession of a controlled substance prior to the search of his wallet. Therefore, the state alleges that the search of Gibson's wallet was a valid as a search incident to arrest. The state points out that, so long as a search and arrest are substantially contemporaneous, and there is probable cause to arrest without depending on the fruits of the search, a valid search incident to arrest may precede the actual arrest. *See State v. Johnson*, 137 Idaho 656, 662, 51 P.3d 1112, 1118 (Ct.App. 2002). To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest and then decide whether those historical facts amount to probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 800, 157 L.Ed.2d 769, 775 (2003).

 A peace officer may make a warrantless arrest when a person has committed a public offense in the presence of the peace officer. I.C. § 19–603(1). Probable cause is "the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty." *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. *Id.; State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974). The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. *Klingler v. United States*, 409 F.2d 299, 304 (8th Cir. 1969); *Julian*, 129 Idaho at 137, 922 P.2d at 1063. The facts making up a probable cause determination are viewed from an objective standpoint. *Julian*, 129 Idaho at 137, 922 P.2d at 1063. In passing on the question of

probable cause, the expertise and the experience of the officer must be taken into account. *State v. Ramirez,* 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct.App.1991). The state has the burden of showing, based on the totality of the circumstances, the validity of any warrantless arrest. *State v. Rodriguez,* 115 Idaho 1096, 1098, 772 P.2d 734, 736 (Ct. App.1989).

The state argues that the canine alert that supplied probable cause to search Gibson's vehicle provided probable cause to believe Gibson was in possession of a controlled substance. Although Idaho courts have held that the canine alert provides probable cause to search an automobile, whether that probable cause gives police authority to execute a warrantless arrest of an occupant of that vehicle, has not been addressed. *See e.g., State v. Tucker,* 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *State v. Gallegos,* 120 Idaho 894, 899, 821 P.2d 949, 954 (1992).

▮ The standard of probable cause involves the same quantum of evidence regardless of whether an arrest or a search is involved. *United States v. Humphries,* 372 F.3d 653, 659 (4th Cir.2004). Nonetheless, the facts needed to justify a search are different from those needed to justify a seizure. *Humphries,* 372 F.3d at 659. Rather, each conclusion requires a showing of probabilities as to somewhat different facts and circumstances. WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.1(b) (3d ed.1996). The right to arrest arises when a crime is committed or attempted in the officer's presence whereas a search can be authorized when probable cause demonstrates that an item connected with criminal activity will be found in a certain location. *Id.* In the case of an arrest, the conclusion concerns the guilt of the arrestee. LAFAVE, *supra,* at § 3.1(b). Accordingly, although the conclusions that justify a search or seizure must be supported by the same degree of integrity, the conclusions themselves are not identical. *Id.* Therefore, the existence of probable cause to search Gibson's vehicle does not resolve whether there was probable cause to believe that Gibson was guilty of possession of a controlled substance.

▮ A person's mere proximity to people who are suspected of criminal activity, or presence in a location where a search has been authorized by warrant, does not give probable cause to search that person. *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979). Instead, "a search or seizure of a person must be supported by probable cause with respect to that person." *Id.* In *Ybarra,* police obtained a warrant to search a tavern based on an informant's tip that the bartender was selling heroin. While executing the warrant, police searched the defendant, who was a patron of the tavern at the time of the search, and found heroin on his person. The Supreme Court reversed the defendant's conviction for possession of a controlled substance, holding the requirement that probable cause be particularized to the person searched or seized cannot be "undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search ... the premises where the person happens to be." *Id.*

▮ Although a drug's odor detected by a dog alerting on a vehicle provides probable cause to believe that the drug is present and authorizes the search of the vehicle, the mere existence of the drug in an automobile does not of itself authorize the police either to search any other place or provide probable cause to arrest any person in the vicinity. *Humphries,* 372 F.3d at 659. Probable cause to believe that drugs are located in an automobile may not automatically constitute probable cause to arrest all persons located in the vehicle; some additional factors would generally have to be present, indicating to the officer that those persons possessed the contraband. *Id.* It has been noted that a dog has the ability to detect very small traces of odors but the existence of a drug's odor at an intensity detectable by the dog does not definitely establish that the drug itself is present. *Matheson v. State,* 870 So.2d 8, 13 (Fla.Dist.Ct.App.2003). Thus, the dog's superior ability to detect odors is both a strength and weakness as to establishing probable cause.[3] *Id.*

■ Whether there is probable cause to arrest an individual depends on the totality of the circumstances and the assessment of probabilities in particular factual contexts. *Pringle*, 540 U.S. at 370–71, 124 S.Ct. at 799–800, 157 L.Ed.2d at 774–75. In *Pringle*, an officer stopped a small car with three men and obtained consent to search the vehicle. The search uncovered $763 in cash rolled up in the glove compartment and five baggies of cocaine in a location accessible to any of the three occupants. None of the car's occupants would acknowledge ownership of the contraband so the officer arrested all three, including the defendant. The Court noted that vehicle passengers are often engaged in a common enterprise with the driver. The Court also reasoned that the quantity of drugs and cash indicated a likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person as a participant. Accordingly the Court stated that it was reasonable for the officer to infer a common enterprise among the three occupants. Therefore, the Court held that the officer had probable cause to believe the defendant had committed the crime of possession of a controlled substance.

In *United States v. Haggard*, 368 F.3d 1020 (8th Cir.2004), the court held that officers had probable cause to arrest the defendant, who was the passenger in the back seat of a car stopped by police. A combination of facts, including information about the defendant's suspected drug trafficking, a drug dog's alert to the car's exterior and to another passenger, the defendant's admission that he recently smoked marijuana, and the officer's discovery of cocaine residue in a location accessible to the defendant, provided the basis for the defendant's arrest. *Id*, at 1024. Similarly, in *Humphries*, the court held that an experienced officer's detection of a strong odor of marijuana emanating from the defendant, combined with his presence in a high crime area, evasive conduct and the officer's reasonable suspicion that the defendant was carrying a firearm, provided the officer probable cause to believe that the defendant was in possession of marijuana. *Humphries*, 372 F.3d at 660–61.

■ The alert of a drug dog on a car seat where an occupant had previously been seated does not, standing alone, give police probable cause to believe that the occupant had drugs on his or her person. *Cady v. State*, 817 So.2d 948, 949 (Fla.Dist.Ct.App.2002); *Bryant v. State*, 779 So.2d 464, 464–65 (Fla.

3. On this point, it is instructive to consider that conditioning and certification programs for drug-detection dogs vary widely in their methods and elements. *See Matheson*, 870 So.2d at 14. In *Matheson*, the court compared training received by United States Customs Service dogs with that of the dog used by the sheriff's office in that case. Customs' dogs receive a rigorous twelve-week training course that includes instruction in disregarding distractions such as food, harmless drugs, and residual scents. In contrast, the dog in *Matheson* received a thirty-day training course and was not conditioned to refrain from alerting to residual odors. In *Illinois v. Caballes*, 543 U.S. 405, ——–——, 125 S.Ct. 834, 839–40, 160 L.Ed.2d 842 (2005), Justice Souter, in his dissent, stated that the "infallible dog" is a creature of legal fiction. Rather, the supposed infallibility of drug dogs is belied by judicial opinions describing well-trained animals sniffing and alerting with less than perfect accuracy, whether owing to errors by their handlers, limitations of the dogs themselves, or even the pervasive contamination from the residual odor of drugs. *Id*. Further, the environment in which police conduct a dog-search can significantly affect its success. Robert C. Bird, *An Examination of the Training and Reliability of the Narcotics Detection Dog*, 85 Ky. L.J. 405, 432 (1997). Canine alerts are most reliable when they are used to confirm police suspicions and least reliable with searches that survey in a random manner. *Id*. Thus, a high accuracy rate that was obtained when the dog was used in conjunction with police expertise demonstrates less actual reliability than a high accuracy rate that was obtained in distracting environments or from use on the general population. *See id*. at 431–32. A review of the facts of cases addressing large-scale canine searches is enlightening. In one situation, police conducted a roadblock in which approximately 1,330 vehicles were stopped. *See Merrett v. Moore*, 58 F.3d 1547, 1549 (11th Cir.1995). Of those stopped, drug detection dogs alerted to twenty-eight vehicles. However, only one person was arrested for possession of narcotics. In *Doe v. Renfrow*, 475 F.Supp. 1012, 1017 (N.D.Ind.1979), a drug dog alerted to approximately fifty students during the school-wide search, but only seventeen students were found in possession of drugs and two students were found in possession of drug paraphernalia. It was discovered that the plaintiff, on whom no drugs were found, had been playing with one of her dogs, which was in heat, the morning of the search.

Dist.Ct.App.2000). In *Bryant*, a drug dog alerted to the vehicle that the defendant was driving, but did not own. No drugs were found in the vehicle. The officer searched the defendant and found cocaine. The court concluded that, although the dog's alert gave probable cause to search the vehicle, the defendant's "mere proximity to a car seat on which someone at some time might have left a residual odor of narcotics fell woefully shy of establishing probable cause to believe" that the defendant possessed narcotics. *Bryant*, 779 So.2d at 464–65. In *Cady*, the defendant was one of two occupants of a vehicle stopped by an officer. A dog alerted to the driver and passenger doors. Inside the vehicle the dog alerted ·to the driver's floor mat, the passenger's seat, and the center console. A small bag of cocaine was found under the driver's floor mat but no other drugs were found. The officer reasoned that, because the dog alerted to the passenger seat where the defendant had been seated and no drugs had been found on that side of the vehicle, the defendant must have possessed the drugs detected by the dog. However, the court found that the dog's alert to the passenger seat after the defendant had exited the vehicle did not give the police probable cause to believe the defendant was in possession of drugs. *Cady*, 817 So.2d at 949.

 The state asserts that, because the search of Gibson's vehicle did not uncover any drugs, the occupants of the car must have been the source of the dog's alert. The dog's detection of the odor of drugs did not automatically justify probable cause to arrest Gibson unless there were additional factors to connect that odor with him. *See Humphries*, 372 F.3d at 659. The state contends that, when the search of the vehicle did not reveal any drugs, there was an increased likelihood that the drugs detected by the dog were on Gibson. However, the failure to discover drugs in the vehicle also increased the likelihood that the dog alerted to the residual odor of someone or something no longer present, that the dog had falsely alerted, or that the dog had detected the odor of drugs on the fourteen-year-old passenger. Contrary to the state's assertion that the odor must have been coming either from

Gibson or from the passenger, the presence of a drug's odor at an intensity detectable by the dog did not mean that the drug itself was present. *See Matheson*, 870 So.2d at 13. In *Pringle* and *Haggard*, where the presence of drugs was an actuality rather than a probability, it was reasonable for the officer to conclude that one of the occupants owned the drugs. Here, where a search of the vehicle to which the dog had alerted yielded no drugs, the facts did not lead sensibly to the conclusion that Gibson was likely guilty of possession. Thus, the odor of drugs on or in Gibson's vehicle, combined with the absence of drugs inside the vehicle, did not provide sufficient additional information to conclude that Gibson probably possessed narcotics.

Unlike *Humphries* or *Haggard* where the police possessed additional information such as the defendant's evasive conduct, presence in a high crime area or suspected involvement in drug trafficking, here there is no evidence that the officers possessed additional facts that connected Gibson to illicit drugs. Also, unlike *Pringle* and *Haggard*, the absence of drugs in Gibson's vehicle precluded the officer from associating the drug's odor with Gibson on the basis of his proximity to the controlled substance. The record reveals that the dog was walked around the outside of Gibson's car and alerted to the passenger side, where Gibson was no longer seated. These facts fail to provide a basis from which the officer could reasonably entertain an honest and strong presumption that Gibson possessed drugs that were detected by the dog.

The state also contends that Gibson's agitated and excited demeanor, and the style of his jacket, provided the officer with sufficient additional facts to suspect that Gibson was guilty of possession. However, Gibson's nervous demeanor does little to support the state's argument. Gibson had been stopped by police after allowing a fourteen-year-old to drive his vehicle in the middle of the night. Gibson thus had reasons to fear repercussions for this conduct with a minor quite apart from speculative apprehension that the officers would discover drugs. Further, because it is common for people to exhibit signs of nervousness when confronted with law enforcement regardless of criminal activity, a

person's nervous demeanor during such an encounter is of limited significance in establishing the presence of reasonable suspicion. *Brent v. Ashley*, 247 F.3d 1294, 1302 (11th Cir.2001); *United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir.1998); *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir.1994).

■ The state also asserts that the style of Gibson's jacket, which had several zippered pockets that were filled with items, increased the probability that Gibson was in possession of narcotics. However, Gibson was stopped in the middle of the night in February, so wearing a jacket was not suspicious. The number of pockets on Gibson's jacket, the fact that the pockets had zippers, or that Gibson had placed his belongings in those pockets, fails to make it any more probable that Gibson was in possession of controlled substances.

The state cites to several cases from other jurisdictions to support its proposition that a drug dog's alert on a vehicle can provide probable cause to arrest an occupant once a search of that vehicle fails to turn up any controlled substances. We note that most of those cases involved dogs' alerts to items of luggage that were connected with a specific individual. Further, in several of those cases the courts relied on a drug dog's alert in combination with other factors in order to conclude that the totality of the circumstances established probable cause to believe a person possessed drugs. The state relies heavily on *United States v. Anchondo*, 156 F.3d 1043 (10th Cir.1998), to support its argument that there was probable cause to arrest Gibson. However, that case involved

a vehicle stopped at a border checkpoint where the canine alerted to the inside of the car. To the extent that case endorses a rule in which a dog's alert on a car, and the subsequent failure of a search of that car to disclose drugs, establishes probable cause to arrest an occupant, we disagree that a similar rule should govern the use of drug detection dogs during routine traffic stops in Idaho.

■ In the instant case, the dog's alert provided probable cause to believe that a place, Gibson's vehicle, may have contained controlled substances. *See Tucker*, 132 Idaho at 843, 979 P.2d at 1201. However, probable cause to believe that there were drugs in Gibson's automobile did not constitute probable cause to arrest Gibson for possession. *See Humphries*, 372 F.3d at 659. Of course, the sufficiency of probable cause is not measured against the high standard of proof beyond a reasonable doubt that is required for conviction. *State v. Zentner*, 134 Idaho 508, 510, 5 P.3d 488, 490 (Ct.App.2000). The dog's alert to Gibson's vehicle, and subsequent failure of a search of that vehicle to disclose contraband, may have caused the officers' suspicions to be aroused. However, the officers could not lawfully arrest Gibson on the basis of their suspicions and could not reasonably conclude that Gibson was in possession of drugs. The officers did not possess any additional information that ripened that suspicion into probable cause to arrest Gibson for the crime of possession before they searched his wallet. Thus, the search of Gibson's wallet was unlawful and its fruits should be suppressed.[4]

---

**4.** As an alternate basis to deny Gibson's motion to suppress, the district court found that an exception to the exclusionary rule, the inevitable discovery doctrine, applied. *See Nix v. Williams*, 467 U.S. 431, 443–44, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377, 387 (1984); *State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct.App.2001). The district court reasoned that Gibson could have been arrested under I.C. § 49–103 for driving in violation of state law. The inevitable discovery doctrine applies when a preponderance of the evidence demonstrates that the information would have inevitably been discovered by lawful methods. *Nix*, 467 U.S. at 444, 104 S.Ct. at 2509, 81 L.Ed.2d at 387. Gibson argues that the district court erred in concluding that he would have been inevitably arrested for violating

traffic laws. The state does not contest Gibson's position on appeal and offers no argument to support the district court's finding on inevitable discovery grounds. Generally, an officer may arrest a person for committing a misdemeanor in his or her presence. I.C. § 19–603(1). However, this authority is modified for violations of Title 49 of the Idaho Code. Instead of an arrest, an officer must issue a citation unless certain circumstances exist. I.C. § 49–1409; *State v. Foldesi*, 131 Idaho 778, 781–82, 963 P.2d 1215, 1218–19 (Ct.App.1998). The record in this case falls short of establishing a reasonable basis to conclude that one of these exceptions applied or that a preponderance of the evidence demonstrates that Gibson's arrest on the basis of a traffic violation was inevitable. We conclude

## III.

### CONCLUSION

The district court erred when it found that the officers could lawfully search Gibson. The district court's order denying Gibson's motion to suppress is therefore reversed, and Gibson's judgment of conviction is vacated.

Judge LANSING and Judge GUTIERREZ concur.

that the district court's finding that Gibson would have been inevitably arrested for the traffic violation was in error and that, therefore, the district court's order denying Gibson's motion to suppress cannot be affirmed on that ground.