**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40195**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 706 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 10, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JENNIFER ELAINE SHAW, aka | ) | THIS IS AN UNPUBLISHED |
| THORNTON, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

———————————————

MELANSON, Judge

In May 2011, an officer observed Jennifer Elaine Shaw, aka Thornton, fail to signal while making a lane change in her vehicle. The officer initiated a traffic stop and learned that Shaw had an outstanding warrant for failing to obey a citation. A canine unit arrived at the scene and performed an exterior sniff around the vehicle. The dog alerted at the gas cap door and officers subsequently searched the vehicle. Inside of Shaw's purse, officers located a small amount of methamphetamine. The state charged Shaw with possession of a controlled substance. I.C. § 37-2732(c). Shaw filed a motion to suppress and the district court denied the motion. Shaw proceeded to trial and a jury found her guilty. Shaw appeals, challenging the denial of her motion to suppress.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

1

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

When a police search has been conducted without a warrant, the state bears the burden to show that the search was done pursuant to a recognized exception to the warrant requirement. *State v. Tucker*, 132 Idaho 841, 842, 979 P.2d 1199, 1200 (1999); *State v. Bower*, 135 Idaho 554, 557, 21 P.3d 491, 494 (Ct. App. 2001). One long-recognized exception to the warrant requirement is the automobile exception, which permits a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or evidence of criminal activity. *United States v. Ross,* 456 U.S. 798, 824 (1982); *Tucker*, 132 Idaho at 842, 979 P.2d at 1200.

A canine sniff of an automobile is not, itself, a search that implicates a privacy interest and thus it need not be justified by suspicion of drug activity. *Illinois v. Caballes,* 543 U.S. 405, 408 (2005); *State v. Yeoumans,* 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007). When a reliable drug-detection dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *State v. Gibson,* 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). *See also Tucker,* 132 Idaho at 843, 979 P.2d at 1201; *State v. Gallegos,* 120 Idaho 894, 898, 821 P.2d 949, 953 (1991); *Yeoumans,* 144 Idaho at 873, 172 P.3d at 1148.

Shaw argues the district court's finding that the drug dog alerted to her vehicle is clearly erroneous and probable cause did not exist because the dog was not reliable. The state argues the district court's findings are supported by substantial and competent evidence and that probable cause existed for the search.

At the hearing on the motion to suppress, the dog's handler testified to the following. He attended a training academy in 2010 in which he was assigned a Malinois herding dog (which he currently handles). The training with the dog occurred five days a week, eight hours per day, for two months. As a result of the training, the dog was certified for detection of methamphetamine, cocaine, marijuana, and heroin. Part of the training also included the handler learning to recognize the dog's behavior indicating an alert. The initial indicators include tensioning of the

dog's body; snapping of the head; and deep, closed-mouthed sniffs through the nose. Ultimately, the dog ends up making eye contact with the handler and, most of the time, will also sit down.

During the exterior sniff of Shaw's vehicle, as the dog passed the open window of the driver's door, it stopped and made eye contact with the handler. The handler then redirected the dog to keep sniffing the exterior of the vehicle. When the dog reached the gas cap door, the dog's behavior changed. The dog's posture tensed, it began to take deep sniffs of the gas cap door, and made intense eye contact with the handler. Next, as the dog began to sit down, its hind legs fell through a storm drain it was standing upon. The dog then scrambled up onto the adjacent sidewalk. The handler interpreted this behavior as an alert to narcotics odor. The handler continued to have the dog sniff the exterior of the vehicle and tried to redirect the dog back to the same position atop the storm drain. However, the dog stayed on the sidewalk when directed back to this location. The dog did not provide any subsequent alerts.

The aforementioned testimony demonstrates the district court's finding that the dog alerted to the presence of narcotics was supported by substantial evidence. While Shaw places significant weight upon the dog's unsure footing when it attempted to sit and the handler's testimony that the dog can be somewhat apprehensive when on surfaces that pose footing issues, this is insufficient to show the district court's finding of an alert was clearly erroneous.

Shaw also argues that the dog is not reliable because it often alerts when no drugs are present. However, the handler testified that his dog alerts to odors, not narcotics themselves, and that these odors can be left behind on secondary objects after an individual has handled narcotics. As recently stated by the U.S. Supreme Court in *Florida v. Harris,* ___ U.S. ___, 133 S. Ct. 1050 (2013), reliable drug dugs should alert to residual odors left behind, and these alerts are not a mistake. *Harris*, ___ U.S. at ____, 133 S. Ct. at 1059. Moreover, Shaw's argument relies upon the dog's performance in the field, which is of relatively limited import when determining the reliability of the dog. *Id.* at ___, 133 S. Ct. at 1056. A more trustworthy measure of a drug dog's reliability comes from the dog's performance in controlled environments. *Id.* at ___, 133 S. Ct. at 1057. Here, the handler testified that his drug dog has a 100 percent accuracy record in training and certification assessments. While evidence that a dog sometimes responds to residual odors is one factor in determining a dog's reliability, it does not undermine the dog's reliability in this case.

3

Shaw also challenges the reliability of the dog by arguing the odor of narcotics should have been the strongest near the open driver's door window, and the dog failed to alert at that portion of the vehicle. However, Shaw's post hoc speculation about where the odor of narcotics would be the strongest is unconvincing. The handler testified that, often times, individuals will touch narcotics and then subsequently touch another object, leaving the odor of the narcotics on that object. The handler testified this explains why it is common for the dog to alert on gas cap doors and the door handles of vehicles. Thus, the district court's finding that the dog was reliable is supported by substantial evidence, and the dog's alert therefore provided probable cause. *See Yeoumans,* 144 Idaho at 875, 172 P.3d at 1150 (an alert by an otherwise reliable drug dog is sufficient to demonstrate probable cause even if there exists a possibility that the dog has alerted to residual odors).

Shaw contends the dog used in this case was trained to simply sniff wherever the handler directs it to and then look to its handler for a reward. The handler testified that this is the initial phase of training with the dog--narcotics are placed into a box, the handler directs the dog to sniff the narcotics, and then provides the dog with a reward. The handler explained that this is done because, at the outset, dogs have no interest in narcotic odor. This initial phase is performed to teach the dogs to detect narcotic odor. However, the handler further explained that the narcotics are then moved into other locations and the dogs need to search and find them. Shaw's argument that this dog only responds to cues from the handler is without merit.

Shaw also argues that the search was not constitutionally permissible under the inventory search exception. Because our ruling on the probable cause issue is dispositive, we do not address the inventory search exception.

The district court's finding that the dog was reliable and alerted to the presence of narcotics is supported by substantial evidence. The district court properly found the search was supported by probable cause. Therefore, the district court did not error in denying Shaw's motion to suppress. Accordingly, we affirm Shaw's judgment of conviction for possession of a controlled substance.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**