IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41220

| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 482 |
|---|---|---|
| | ) | |
| Plaintiff-Appellant, | ) | Filed: April 29, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOHN (2013-16) DOE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge; Hon. David D. Manweiler, Magistrate.

District court's decision affirming magistrate court's order suppressing evidence, reversed and case remanded.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Alan E. Trimming, Ada County Public Defender; Alan D. Malone, Deputy Public Defender, Boise, for respondent. Alan D. Malone argued.
_____

LANSING, Judge

The State appeals from the district court's memorandum decision and order affirming the magistrate's order suppressing evidence. At issue is whether an alert by a reliable drug dog at the driver's door seam of an automobile provides, under the Fourth Amendment, probable cause to search the entire vehicle, including the trunk, under the automobile exception to the warrant requirement. We hold that it does, and we reverse.

**I.**

**BACKGROUND**

In August of 2011, the principal of Meridian Academy in Meridian, Idaho asked Officer Sunada, a Meridian police officer acting as the school's resource officer, to arrange for a drug dog to sniff the exterior of students' vehicles in the school parking lot for illegal drugs. Sunada

1

called fellow Meridian police officer Vogt who arrived with his drug canine, Max. Max alerted on the lower seam of the driver's side door on a car belonging to seventeen-year-old defendant John Doe. The dog did not alert on the trunk area, however. Sunada physically searched the passenger compartment of the vehicle, but no illegal drugs were found. Sunada then searched the trunk and found a marijuana pipe.

Doe was charged in juvenile court with possession of drug paraphernalia, Idaho Code § 37-2734A. Doe filed a motion to suppress the paraphernalia evidence and statements he made to Sunada. Following a hearing, the magistrate granted Doe's motion. The magistrate court held that while the canine alert at the driver's door established probable cause to search the passenger compartment of the vehicle without a warrant, it did not establish probable cause to search the trunk. Accordingly, the magistrate suppressed the drug evidence and further suppressed Doe's statements as fruit of the unlawful search. The State appealed to the district court, which affirmed. The State now further appeals.

## II.

## STANDARDS OF REVIEW

When a decision on a motion to suppress evidence is challenged on appeal, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

2

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## III.

## ANALYSIS

This case is decided solely under the Fourth Amendment to the United States Constitution, as Doe did not assert below any violation of his rights under Article I, § 17, of the Idaho Constitution. The Fourth Amendment prohibits unreasonable searches and seizures. Warrantless searches, conducted outside the judicial process without prior approval by judge or magistrate, are per se unreasonable, subject only to a few well-delineated exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009); *Katz v. United States*, 389 U.S. 347, 357 (1967). One of those, the "automobile exception," allows police to search a vehicle without a warrant when there is probable cause to believe the vehicle contains contraband or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 155-56 (1925). The permissible scope of a warrantless automobile search "is defined by the object of the search and the places in which there is probable cause to believe it will be found." *United States v. Ross*, 456 U.S. 798, 824 (1982).

The test for probable cause is not reducible to "precise definition or quantification." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present. *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion). In evaluating whether the State has met this standard, the totality of the circumstances is considered. *Pringle*, 540 U.S. at 371; *Gates*, 462 U.S. at 232; *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

A. **The Standard Applicable to School Searches**

We address initially the State's assertion that a lesser standard than probable cause is sufficient to justify the search because it took place on school grounds. In *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985), the United States Supreme Court concluded that the school setting

"requires some modification of the level of suspicion of illicit activity needed to justify a search." The Court said that for searches by school officials, "a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause." *Id.* at 340-41. The Court held, "Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42. *See also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (citing *T.L.O.* as adopting "a standard of reasonable suspicion").

Here, the State notes that the magistrate applied the *T.L.O.* standard and asserts that the search of the vehicle should be analyzed not under the probable cause standard ordinarily applied under the automobile exception, but rather under the lesser "reasonable suspicion" standard applied to school searches. We need not resolve whether the *T.L.O.* standard would apply in the circumstances presented here because, as explained below, even applying the more stringent probable cause standard, the search was lawful.

**B.     This Court's Decision in *State v. Schmadeka* Was Misapplied**

An alert by a properly-trained drug dog generally provides probable cause to search a vehicle. *Florida v. Harris*, ___ U.S. ___, 133 S. Ct. 1050, 1057 (2013); *State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012). The U.S. Supreme Court has held that probable cause to believe a vehicle contains evidence of criminal activity "authorizes a search of any area of the vehicle in which the evidence might be found." *Gant*, 556 U.S. at 347 (citing *Ross*, 456 U.S. at 820-21).

Here, probable cause to search was based solely on the drug dog's alert on the seam of the driver's side door of Doe's vehicle; there were no other "totality of the circumstances" to consider. The magistrate found that while this alert provided probable cause to search the passenger compartment, it did not provide probable cause to search the trunk, where the contraband at issue was found. The magistrate based this determination upon this Court's decision in *State v. Schmadeka*, 136 Idaho 595, 38 P.3d 633 (Ct. App. 2001), and the district court, also relying on *Schmadeka*, affirmed the magistrate's decision.

The search in *Schmadeka* was not predicated upon a drug dog's alert. Rather, a police officer detected the odor of burning marijuana coming from the passenger compartment of a

4

vehicle during a traffic stop. The officer then searched the entire vehicle. He found no marijuana, but in the trunk he found precursors of methamphetamine production. After the driver was charged with a drug offense, he filed a suppression motion, contending that probable cause to search the trunk was lacking. The trial court denied the motion. The question addressed in *Schmadeka* was the scope of the allowable search under the automobile exception when probable cause is based upon an odor of burnt marijuana coming from the passenger compartment. We noted that, "The permissible scope of a warrantless automobile search 'is defined by the object of the search and the places in which there is probable cause to believe it will be found,'" *Id.* at 598, 38 P.3d at 636 (quoting *Ross*, 456 U.S. at 824), and that "[t]he existence of probable cause to search the interior of a car is not necessarily sufficient to justify a search of the car's trunk." *Schmadeka*, 136 Idaho at 599, 38 P.3d at 637. We joined the courts of a number of other jurisdictions which had held that an officer's detection of an odor of burnt marijuana coming from the passenger compartment of a car provided probable cause to search the passenger compartment but did not provide probable cause to search the car's trunk. *Id.* at 599-600, 38 P.3d at 637-38. Our decision was predicated upon the commonsense distinction between the odor of burnt marijuana in the passenger compartment, which alone is not indicative of marijuana in the trunk, and an officer's detection of the odor of raw marijuana, which may justify a search of the entire vehicle:

> [The distinction] is premised on the common sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking, and because it is unreasonable to believe people smoke marijuana in the trunks of cars, the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana.

*Id.* at 600, 38 P.3d at 638 (quoting *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000)).

The State argues that the lower courts in this case erred by applying to a drug dog alert on a vehicle the *Schmadeka* limitation on the scope of probable cause created by the odor of burnt marijuana. We agree. The result in *Schmadeka* stemmed from the fact that the officer discerned that the marijuana he smelled had been *burned*. The *Schmadeka* rationale was that marijuana is not likely to be smoked in a vehicle trunk, nor is burnt marijuana likely to be transported in a vehicle trunk. The same commonsense reasoning does not hold true for a drug-dog alert, which communicates no distinction between burnt marijuana and raw marijuana or other drugs to which the dog has been trained to alert. According to Officer Vogt's testimony, Max was trained to

5

alert to the odor of cocaine, heroin, methamphetamine, and marijuana. With respect to marijuana, Vogt said that Max will alert on the odor of the drug regardless of whether it is from marijuana smoke or raw marijuana and that when Max alerted in this case, Vogt had no idea which of the several drugs Max was detecting. In addition, Vogt testified that in his experience Max would sometimes alert at a door seam of a vehicle when the drugs were eventually found only in the trunk, attributing this to an odor carried by air flow within the structure of the vehicle. Thus, unlike the officer's odor recognition in *Schmadeka*, Max's alert on the door seam did not logically limit probable cause to the passenger compartment.

Although no prior case has directly addressed this issue, Idaho case law has not imposed limits on the area of a vehicle that is searchable based upon a drug-dog alert. *Anderson*, 154 Idaho at 706, 302 P.3d at 331 ("A reliable drug dog's alert on the exterior of a vehicle is sufficient, in and of itself, to establish probable cause for a warrantless search of the interior."); *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999) ("This Court previously has acknowledged that an officer's investigation at the scene of a stopped automobile can ripen into probable cause as soon as a drug detection dog alerts on the exterior of the vehicle, justifying a search of the vehicle without the necessity of obtaining a warrant."); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991) ("In this case, the officer's reasonable and articulable suspicion to stop appellant's vehicle ripened into probable cause as soon as the drug-detection dog alerted on the rear exterior of the vehicle. Once the officers had probable cause, it was proper for them to search the automobile without a warrant."); *State v. Buck*, 155 Idaho 828, 829, 317 P.3d 725, 726 (Ct. App. 2014) ("When a reliable drug dog indicates that a lawfully stopped automobile contains the odor of a controlled substance, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant."); *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005) ("When a reliable drug-detection dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant."). As Doe has cited us to no authority from any jurisdiction holding that a drug dog's alert provides probable cause to search only the localized area of the car where the dog indicated, we decline to impose such a limitation in this case.

**C.      Possibility That Drug Dog Alerted to a Residual Odor**

Doe argues that the district court's suppression decision should be upheld on an alternative basis that he raised before the trial court but which that court did not reach in its disposition.  He asserts that Max's alert did not create probable cause to believe drugs were present in the car because evidence at the suppression hearing showed that the dog could not distinguish between the odor of drugs that are present and residual odors left by drugs that were formerly there, or even transferred odors from hands.  According to Vogt's testimony, if a person with marijuana residue on a hand touches a door handle, the odor of marijuana may be present at that location for an unknown period, and Max may alert even though no marijuana was ever in the car.  Similarly, Vogt said, if a person with illegal drugs in a back pocket sits in the car, the odor of the drugs may remain on the seat.  Consequently, Doe argues, a dog not trained to ignore residual odors fails to provide even a "reasonable probability" that drugs are presently contained in the vehicle.

There may be some logic in Doe's contention that a drug dog whose detection skills fail to differentiate between the actual presence of illegal drugs and residual odors[1] provides sparse reason to believe that drugs are currently present.  Nevertheless, Doe's position runs counter to a recent decision by the final authority on interpretation of the Fourth Amendment, the United States Supreme Court. In *Harris*, the Court addressed whether extensive records of a drug dog's field performance were required to establish the dog's reliability.  The Court rejected such an approach as inflexible and stated that evidence of a dog's satisfactory performance in a bona fide certification or training program can provide sufficient reason to trust a dog's alert and allow a court to find that the dog's alert provides probable cause. *Id.* at ___, 133 S. Ct. at 1057.[2]  Along the way, the Supreme Court specifically rejected the proposition that the possibility of the dog alerting to a residual odor detracts from probable cause.  The Court said:

---

[1]      In *State v. Gibson*, 141 Idaho 277, 283 n.3, 108 P.3d 424, 430 n.3 (Ct. App. 2005), this Court cited *Matheson v. State*, 870 So. 2d 8, 13-14 (Fla. Dist. Ct. App. 2003), which noted that United States Customs Service dogs receive a rigorous twelve-week training course that includes instruction in disregarding distractions such as food, harmless drugs, and residual scents.  Thus, it appears, dogs *can* be trained not to alert on residual scents, but that this requires more training and an amenable dog.

[2]      The defendant must, of course, have the opportunity to challenge this evidence of a dog's reliability through cross-examination or expert witnesses, such as by asserting that a training program or method is inadequate. *Harris*, ___ U.S. at ___, 133 S. Ct. at 1057.

> The Florida Supreme Court treated a dog's response to residual odor as an error, referring to the "inability to distinguish between [such] odors and actual drugs" as a "facto[r] that call[s] into question Aldo's reliability." [*Harris v. State*, 71 So. 3d 756, 773-774 (Fla. 2011)]; *see supra*, at 1055. But that statement reflects a misunderstanding. A detection dog recognizes an odor, not a drug, and should alert whenever the scent is present, even if the substance is gone (just as a police officer's much inferior nose detects the odor of marijuana for some time after a joint has been smoked). In the usual case, the mere chance that the substance might no longer be at the location does not matter; a well-trained dog's alert establishes a fair probability--all that is required for probable cause--that either drugs or evidence of a drug crime (like the precursor chemicals in Harris's truck) will be found.

*Harris*, ___ U.S. at ___ n.2, 133 S. Ct. at 1056 n.2.

Before the Supreme Court's decision in *Harris*, this Court had already held that "[a]n alert by an otherwise reliable, certified drug detection dog is sufficient to demonstrate probable cause to believe contraband is present even if there exists a possibility that the dog has alerted to residual odors." *State v. Yeoumans*, 144 Idaho 871, 875, 172 P.3d 1146, 1150 (Ct. App. 2007). *Harris* gives final resolution to the issue contrary to Doe's position in this appeal.

*Harris* also resolves to Doe's detriment another argument that he advances. Doe asserts that Max's field performance on the day in question shows that the dog was not reliable because it alerted on a number of other vehicles in the school parking lot, and the resulting searches of those vehicles yielded no illegal drugs. The *Harris* Court also rejected this reasoning, stating:

> Making matters worse, the decision below treats records of a dog's field performance as the gold standard in evidence, when in most cases they have relatively limited import. Errors may abound in such records. If a dog on patrol fails to alert to a car containing drugs, the mistake usually will go undetected because the officer will not initiate a search. Field data thus may not capture a dog's false negatives. Conversely (and more relevant here), if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person. Field data thus may markedly overstate a dog's real false positives. By contrast, those inaccuracies--in either direction--do not taint records of a dog's performance in standard training and certification settings. There, the designers of an assessment know where drugs are hidden and where they are not--and so where a dog should alert and where he should not. The better measure of a dog's reliability thus comes away from the field, in controlled testing environments.

*Harris*, ___ U.S. at ___-___, 133 S. Ct. at 1056-57 (footnotes omitted).  The Court concluded that the State's evidence that the dog was a reliable detector of drugs was not effectively rebutted by the fact that the officer's search did not yield any of the drugs the dog had been trained to detect.  *Id.* at ___, 133 S. Ct. at 1058-59.

In light of the *Harris* decision, neither Max's capacity to alert on residual odors nor his alerting on cars in which no drugs were found precluded a finding that his alert on Doe's vehicle supplied probable cause for a search.

**D.**     **The Automobile Exception Applies Even if the Vehicle Is Not Currently "Readily Movable"**

Lastly, Doe argues, as another alternate basis to uphold suppression, that the automobile exception to the warrant requirement should not apply here because his vehicle was unoccupied and parked and thus not readily mobile when the search occurred.  It is true that the automobile exception was, at least originally, founded in part upon the rationale that "the opportunity to search is fleeting since a car is readily movable."  *Chambers v. Maroney*, 399 U.S. 42, 51 (1970).  However, the Supreme Court has subsequently soundly rebuffed the notion that the exception is inapplicable if the element of mobility, and the risk of loss of evidence, is removed in a particular circumstance.  Both *Michigan v. Thomas*, 458 U.S. 259 (1982) and *Florida v. Meyers*, 466 U.S. 380 (1984) hold that the automobile exception applies even after the automobile has been impounded and is in police custody.  "[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized."  *Thomas*, 458 U.S. at 261.  Doe's argument on this point has no merit.

**IV.**

**CONCLUSION**

For the reasons stated, the district court's decision on appeal affirming the magistrate's suppression order is reversed, and the case is remanded.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

9