**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40634**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 2** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: January 10, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| JACOB JEROME BUCK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. James C. Morfitt, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Jacob Jerome Buck appeals from his judgment of conviction for possession of a controlled substance. Specifically, he alleges that the district court erred in denying his motion to suppress because the search of his vehicle was performed without probable cause. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Buck was initially pulled over for failing to stop at an intersection. While the officer ran Buck's information, a drug dog was brought to the scene, performed a perimeter sniff of Buck's vehicle, and alerted to both the driver and passenger doors. A search of Buck's vehicle revealed hydrocodone pills and two baggies of a white, crystalline substance that tested presumptive positive for methamphetamine.

1

Buck was charged with possession of a controlled substance. I.C. § 37-2732(c). He filed a motion to suppress the evidence obtained from the search of his vehicle, arguing that the search lacked probable cause. This, he asserted, was because the drug dog that alerted on his vehicle was unreliable due to the use of an allegedly flawed training method and a history of what Buck interpreted as false positive alerts in the field. The district court denied the motion, finding that the dog was reliable. The district court based its decision on the dog's training and recertification record and evidence that the alleged false positive alerts were likely alerts to residual odors of controlled substances.

Buck thereafter entered an *Alford*[1] plea to possession of a controlled substance and preserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced him to a unified term of seven years, with a minimum period of confinement of three years, but suspended the sentence and placed Buck on probation. Buck appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The state may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

reasonable under the circumstances. *Id.* One such exception is the automobile exception, under which police officers may search an automobile and the containers within it when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 153 (1925); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983); *State v. Johnson*, 152 Idaho 56, 61, 266 P.3d 1161, 1166 (Ct. App. 2011). When a reliable drug dog indicates that a lawfully stopped automobile contains the odor of a controlled substance, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *Gallegos*, 120 Idaho at 898, 821 P.2d at 953; *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005).

On appeal, Buck asserts that the drug dog's alert was not reliable due to the allegedly flawed method used to train the dog.[2] The U.S. Supreme Court recently addressed a similar issue in *Florida v. Harris*, ___ U.S. ___, 133 S. Ct. 1050 (2013). In *Harris*, the Court addressed whether extensive records of a drug dog's field performance were required to establish reliability. The Court rejected this approach as inflexible and stated that the correct analysis was similar to any other probable cause analysis--that is, whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. *Id.* ___ U.S. at ___, 133 S. Ct. at 1058. The Court also noted that evidence of a dog's satisfactory performance in a bona fide certification or training program can, itself, provide sufficient reason to trust a dog's alert and allow a court to presume that the dog's alert provides probable cause. *Id.* at ___, 133 S. Ct. at 1057. However, the defendant must have the opportunity to challenge this evidence of a dog's

---

[2] Buck originally challenged the dog's reliability before the district court on the basis of an alleged history of false positives in the field. However, he declined to reassert this challenge on appeal in light of this Court's decision in *State v. Yeoumans*, 144 Idaho 871, 875, 172 P.3d 1146, 1150 (Ct. App. 2007) (holding that an alert by an otherwise reliable, certified drug dog is sufficient to demonstrate probable cause to believe contraband is present even if there exists a possibility that the dog has alerted to residual odors) and the U.S. Supreme Court's decision in *Florida v. Harris*, ___ U.S. ___, 133 S. Ct. 1050 (2013) (holding that field data has limited applicability when determining a drug dog's reliability, with the better measure of reliability being performance in controlled settings).

3

reliability through cross-examination or expert witnesses, such as by asserting that a training program or method is inadequate. *Id.*

Here, Buck challenged the adequacy of the method used to train the drug dog, but failed to present any documentary or expert witness evidence indicating that the training method was actually flawed or inadequate. Instead, he relied entirely on the statements of the handling officer indicating that the positive reinforcement method used to train his dog may not be universally preferred. The officer testified that, for the entire six years that he had worked with his dog, he had used a training method of giving a reward as soon as the dog gave a hard alert, where the dog sits down and looks up adamantly, refusing to move until the alert is acknowledged with a reward. The officer admitted that there was a "big debate" over whether a dog should be rewarded when making a hard alert before or after drugs are found. He also testified during cross-examination that it had been suggested at a recent training that the latter was preferred to avoid the possibility of the dog alerting when no drugs are present solely to get a reward. However, at no point did the handling officer or anyone else testify that the training method was flawed, outdated, or otherwise inadequate.

The district court determined that the drug dog was reliable based on undisputed evidence that the dog was and is a state-certified drug dog that has never failed a recertification test. The dog and handling officer initially underwent eighty hours of training with an Idaho State Police certified trainer and passed the certification test on the first attempt. The dog is also subject to annual recertification, which he has passed each time on the first attempt. Indeed, the handling officer testified that the dog has never failed any testing in a controlled setting. The handling officer also testified that he engaged in weekly training with the dog. He testified that he had no reason to doubt the dog's reliability prior to stopping Buck, as the dog had not provided any confirmed false alerts during the certification period or failed to alert on drugs in any controlled settings. According to the officer's undisputed testimony, all of this training and certification was done using the training method of rewarding the dog for a hard alert even before controlled substances are found. Judging by the fruits of this training method as established by substantial evidence at the suppression hearing, we cannot say the method is inadequate or flawed. The district court did not err in finding the drug dog reliable.

4

# IV.

## CONCLUSION

Buck has failed to show that the method used to train the drug dog in this case was flawed or inadequate. Thus, the dog was reliable and the dog's alert on Buck's vehicle provided probable cause to search. The district court did not err in denying Buck's motion to suppress. Accordingly, we affirm Buck's judgment of conviction for possession of a controlled substance.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**