**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42680**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 76** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: November 10, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **THOMAS CAMPBELL KELLEY,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy L. Hansen, District Judge.

Judgment of conviction for trafficking in marijuana, <u>affirmed</u>.

Bublitz Law, P.C., Jessica B. Bublitz, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

MELANSON, Chief Judge

Thomas Campbell Kelley appeals from his judgment of conviction for trafficking in marijuana. Specifically, Kelley argues that the search of his vehicle was invalid and the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Oregon State Police informed the Idaho State Police that Kelley had been stopped in Oregon. The Oregon officer advised that his encounter with Kelley aroused suspicion of drug activity, but no drug dog was available for a search. Kelley did not consent to a search of the vehicle and was allowed to continue on his way. An Idaho officer observed and stopped Kelley after he changed lanes on Interstate 84 (I-84) without signaling for at least five continuous seconds in violation of I.C. § 49-808(2).

1

During the stop, Kelley provided a driver's license and car registration from different states. The car was owned by a third party and Kelley was unable to provide proof of insurance. The officer conducted follow-up inquiries about the car's owner, the insurance, and Kelley's trip plans. During this discussion, Kelley provided false information about his encounter with Oregon police and details about his trip from the Lake Tahoe area to Jackson Hole, Wyoming. These topics were revisited throughout the encounter. The officer noted Kelley's bloodshot eyes and conducted a test, which revealed that Kelley had eyelid tremors consistent with recent marijuana use. Approximately eight minutes into the stop, a drug dog performed a perimeter sniff of Kelley's vehicle and alerted to the front driver and passenger doors and open windows. Once inside the vehicle, the dog promptly entered the backseat, which was partially folded down and open to the trunk compartment. The dog alerted to areas between and under the backseat cushions toward the rear of the vehicle. In a subsequent search of the trunk, three vacuum-sealed containers of marijuana were found.

Kelley was charged with trafficking in marijuana. I.C. § 37-2732B(a)(1). He filed a motion to suppress the evidence obtained from the search of his vehicle. Specifically, Kelley argued that the stop was invalid because I.C. § 49-808(2) is void for vagueness and because the officer did not have reasonable suspicion to extend the duration of the traffic stop. Additionally, Kelley argued that the officers did not have probable cause to search the vehicle's trunk area. The district court denied the motion. Kelley entered a conditional guilty plea to trafficking in marijuana, preserving his right to challenge the denial of his motion to suppress. Kelley appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

### A.    Void for Vagueness

Kelley argues that I.C. § 49-808(2) is void for vagueness as applied to his conduct. Where the constitutionality of a statute is challenged, we review the lower court's decision de novo. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998); *State v. Martin*, 148 Idaho 31, 34, 218 P.3d 10, 13 (Ct. App. 2009). The party attacking a statute on constitutional grounds bears the burden of proof and must overcome a strong presumption of validity. *State v. Freitas*, 157 Idaho 257, 261, 335 P.3d 597, 601 (Ct. App. 2014); *State v. Cook*, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct. App. 2008). Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *Freitas*, 157 Idaho at 261, 335 P.3d at 601; *Martin*, 148 Idaho at 34, 218 P.3d at 13.

Due process requires that all be informed as to what the state commands or forbids and that persons of ordinary intelligence not be forced to guess at the meaning of the law. *Cobb*, 132 Idaho at 197, 969 P.2d at 246. No one may be required at the peril of loss of liberty to speculate as to the meaning of penal statutes. *Freitas*, 157 Idaho at 261, 335 P.3d at 601. A void for vagueness challenge is more favorably acknowledged and a more stringent vagueness test will be applied where a statute imposes a criminal penalty. *Cobb*, 132 Idaho at 198, 969 P.2d at 247. As a result, criminal statutes must plainly and unmistakably provide fair notice of what is prohibited and what is allowed in language persons of ordinary intelligence will understand. *State v. Kavajecz*, 139 Idaho 482, 486, 80 P.3d 1083, 1087 (2003). Additionally, a statute is void for vagueness if it invites arbitrary and discriminatory enforcement. *Freitas*, 157 Idaho at 261, 335 P.3d at 601. A statute avoids problems with arbitrary and discriminatory enforcement by identifying a core of circumstances to which the statute or ordinance unquestionably could be constitutionally applied. *Id.* A statute should not be held void for uncertainty if it can be given any practical interpretation. *Id.* at 262, 335 P.3d at 602.

A statute may be challenged as unconstitutionally vague on its face or as applied to a defendant's conduct. *Freitas*, 157 Idaho at 262, 335 P.3d at 602; *Martin*, 148 Idaho at 35, 218 P.3d at 14. Here, Kelley does not make a facial challenge, but contends only that the statute is impermissibly vague as applied to him. To succeed on an as-applied vagueness challenge, a

defendant must show that the statute failed to provide fair notice that the defendant's conduct was prohibited or failed to provide sufficient guidelines such that police had unbridled discretion in determining whether to arrest the defendant. *State v. Pentico*, 151 Idaho 906, 915, 265 P.3d 519, 528 (Ct. App. 2011).

In this case, the officer stopped Kelley for failing to signal his lane change for at least five continuous seconds on a controlled access highway in violation of I.C. § 49-808(2). Idaho Code Section 49-808 governs the use of turn signals on Idaho roadways and provides, in pertinent part:

> (2) A signal of intention to turn or move right or left when required shall be given continuously to warn other traffic. *On controlled-access highways* and before turning from a parked position, the signal shall be given continuously for not less than five (5) seconds and, *in all other instances*, for not less than the last one hundred (100) feet traveled by the vehicle before turning.

(Emphasis added.)

Kelley argues that I.C. § 49-808(2) fails to provide fair notice of the signaling requirements when traveling along I-84. Under his interpretation of the statute, it is unconstitutionally vague as applied here because the nature of I-84 invokes both the "controlled-access highway" and the "in all other instances" signal requirements. Specifically, he argues that I-84 qualifies as a controlled-access highway subjecting him to the five-second signaling rule and also as a "through highway" falling under the all other instances requirement to signal for not less than the last 100 feet traveled by the vehicle before turning. Under this construction, Kelley contends that a person of ordinary intelligence would be unable to distinguish between the two types of highways and consequently renders the person unable to discern what is required under the statute.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to

resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

This Court recently interpreted the plain meaning of I.C. § 49-808(2) in *State v. Brooks*, 157 Idaho 890, 341 P.3d 1259 (Ct. App. 2014). There, we held that, because Brooks was traveling on a controlled-access highway, he was required to signal for at least five continuous seconds prior to moving out of his lane into another. *Id.* at 892, 894, 341 P.3d at 1261, 1263. Because Brooks had failed to signal for five continuous seconds before changing lanes, he violated I.C. § 49-808(2) and provided the officer reasonable suspicion to conduct a traffic stop. *Id.* at 894, 341 P.3d at 1263. In interpreting the statute, this Court held that I.C. § 49-808(2) requires that a vehicle signal for at least five continuous seconds when traveling on a controlled-access highway and when turning from a parked position (regardless of the type of roadway on which the vehicle is parked). *Brooks*, 157 Idaho at 894, 341 P.3d at 1263. We held that in all other circumstances, a vehicle must signal for at least the last 100 feet traveled before turning. *Id.*

Under the plain language of the statute, when a highway meets the definition of a controlled-access highway under I.C. § 49-109(5)(b), a driver is required to abide by the signaling requirements of controlled-access highways. Kelley concedes that I-84 qualifies as a controlled-access highway. Kelley argues that the statute is vague because in addition to being a controlled access highway, I-84 may be considered a through highway as defined in I.C. § 49-109(5)(c). Kelley cites the testimony of an Idaho Department of Transportation official who was called as a witness by the state. On direct examination, the official testified that I-84 is a limited access highway.[1] On cross-examination, he testified that he was not aware of any statutory definition of "through highway." Defense counsel then asked the official whether traffic on I-84 "is given preferential right-of-way at the entrances to which other vehicles try to come onto the highway." He responded that, according to his understanding of the traffic laws, that was true. However, in full, I.C. § 49-109(5)(c) defines a through highway as "[a]ny highway or portion of it on which vehicular traffic is given preferential right-of-way, and at the entrances to which vehicular traffic from *intersecting highways* is required by law to yield the

---

[1] It is apparent from the testimony that limited access and controlled access are used interchangeably.

5

right-of-way to vehicles on the through highway *in obedience to a stop sign, yield sign, or other traffic-control device*." (Emphasis added.) Notably, the italicized portion of the definition was omitted from defense counsel's question and is omitted from Kelley's brief on appeal. Kelley relies solely upon the testimony of the official to show that I.C. § 49-808(2) is vague. He has not met his burden. Furthermore, as we noted in *Brooks*, an interpretation of I.C. § 49-808(2) which would require signaling a lane change for not less than 100 feet would mean that the driver of a vehicle traveling at the speed limit would need to signal for less than one second before changing lanes. This interpretation of the statute would be inconsistent with the clearly expressed legislative intent of ensuring driver safety by requiring signals that are appropriate for the attendant circumstances. *Brooks*, 157 Idaho at 894, 341 P.3d at 1263. Applying the same reasoning to Kelley's argument, we note that the void-for-vagueness doctrine requires that all be informed as to what the state commands or forbids and that persons of common intelligence not be forced to guess at the meaning of the criminal law. *Smith v. Goguen*, 415 U.S. 566, 574 (1974); *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). Surely, no person of ordinary intelligence would reasonably believe that I.C. § 49-808(2) requires a driver on I-84 to signal for less than one second before changing lanes.

Because I-84 is a controlled-access highway, Kelley was required to signal continuously for five seconds prior to moving right or left in order to warn other motorists. *See Brooks*, 157 Idaho at 894, 341 P.3d at 1263 (interpreting I.C. § 49-808(2)). Because a plain reading of the statute delineates the signaling requirements of motorists traveling on a controlled-access highway, it provides adequate notice. We hold that I.C. § 49-808(2) is neither ambiguous nor unconstitutionally vague as applied to Kelley's conduct.

B.    **Reasonable Suspicion to Extend Stop**

Kelley challenges the district court's conclusion that the officer did not unreasonably extend the length or scope of the traffic stop to allow for a drug investigation and the drug dog search. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the

6

vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Investigative detentions must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000).

The investigation following a stop generally must be reasonably related in scope to the circumstances that justified the interference in the first place. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Suspicious circumstances may arise out of a routine traffic stop that could justify an officer asking further questions unrelated to the stop. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Thus, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation. *Id.* Accordingly, the length and scope of an investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify suspicion of criminal activity in addition to that which prompted the detention. *Id.*

A drug dog sniff may be performed during a traffic stop without violating the Fourth Amendment if the duration of the stop is not extended or if any extension of the stop is justified by reasonable suspicion. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (use of a well-trained

narcotics-detection dog during a lawful traffic stop does not rise to the level of a constitutionally cognizable infringement); *State v. Ramirez*, 145 Idaho 886, 890, 187 P.3d 1261, 1265 (Ct. App. 2008) (stop was not extended to allow a drug dog sniff); *State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001) (extending the stop to allow for a drug dog sniff was justified).

When gauging whether information known to an officer justified reasonable suspicion, we consider the totality of the circumstances rather than viewing individual facts in isolation. *Roe*, 140 Idaho at 180, 90 P.3d at 930. Even where any individual factor "is not by itself proof of any illegal conduct and is quite consistent with innocent" conduct, a court may nonetheless conclude that the factors amount to reasonable suspicion when taken together. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). In other words, the whole may be greater than the sum of its parts because the officer may consider the import of one fact in light of another fact.

In this case, prior to the Idaho officer's encounter with Kelley, he received information about Kelley's earlier encounter with Oregon police. During that stop, Kelley was suspected of drug activity, but the Oregon officer let Kelley proceed because no drug dog was available and Kelley refused consent to search the vehicle. The Idaho officer observed Kelley commit a traffic infraction at 12:19:46 a.m. and initiated a traffic stop. Kelley produced a driver's license and car registration naming a third party owner but failed to provide proof of insurance. During the follow-up discussion about the registration and insurance, at 12:20:26 a.m., Kelley volunteered information about the Oregon stop, which the officer knew to be false. At 12:20:53 a.m., Kelley referred to details about his travel plans from the Lake Tahoe area to Jackson Hole, Wyoming. The officer made further inquiry about the owner of the vehicle, to which Kelley volunteered additional information about his living arraignments in the Lake Tahoe area. At 12:21:49 a.m. the officer once again asked about insurance and Kelley was still unable to produce proof of coverage. During the conversation with Kelley, the officer observed also that Kelley's eyes were bloodshot.

The district court held that, based on the totality of the circumstances, the officer had reasonable suspicion to extend the duration of the stop beyond the initial purpose of a traffic violation to allow for a drug dog search. The district court found that the officer was trained and experienced to identify indicators of drug trafficking and of marijuana use. The district court noted that the officer, based on his training and experience, regarded Kelley's travel plans as

confusing and suspicious because he was making a quick back and forth trip, with little luggage, in a third-party-owned vehicle from the Lake Tahoe area to Jackson Hole, Wyoming, via central Oregon, which was not the most direct route. The district court also noted that the officer had knowledge about the details concerning Kelley's encounter with the Oregon police and thus, the officer knew that Kelley's statements about that stop were false, thereby raising further suspicion that there may be narcotics in the vehicle. The district court finally noted the officer's observation that Kelley had bloodshot eyes, later prompting the officer to perform an eye tremor test which positively indicated recent marijuana use. Accordingly, the district court held that the officer possessed reasonable suspicion to extend the traffic stop to investigate possible narcotics activity and allow for a drug dog search. Given the officer's training and the information previously provided by the Oregon police, the officer's suspicion that Kelley may be involved in drug activity was reasonable based on the factors identified by the district court. Therefore, we hold that the officer possessed reasonable suspicion to extend the duration of the stop beyond the initial purpose of a traffic violation to allow for a drug investigation and the subsequent drug dog search.

On appeal, Kelley does not appear to argue that the officer's inferences drawn from Kelley's misrepresentations about the Oregon stop and his travel plans were unreasonable per se. Rather, Kelley argues that this information did not arise until after the purpose of the stop had ended or was impermissibly abandoned. Kelley contends this occurred after the officer last mentioned the proof of insurance at 12:22:25 a.m., less than four minutes into the stop. Recently the United States Supreme Court held that authority to detain a motorist ends when tasks tied to the traffic infraction are completed or reasonably should have been completed. *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1614-15 (2015). Kelley has not demonstrated, beyond a mere assertion, that within those first four minutes of the stop the officer could or should have been able to run Kelley's information and issue a warning or citation.[2] The

---

[2] To support his argument that the purpose of the stop had ended before the suspicious information arose, Kelley analogizes his case to *State v. Gutierrez*, 137 Idaho 647, 51 P.3d 461 (Ct. App. 2002) (holding that it was impermissible for an officer to question a driver about matters unrelated to the traffic stop after the officer had fulfilled the purpose of the stop by issuing a written warning to the driver). Kelley asks this Court to conclude that, because the

officer had not yet returned to his police car to run Kelley's information, nor did he make any indication about giving a warning for either the traffic violation or failure to provide proof of insurance. Contrary to Kelley's assertions, the record does not show that the purpose of the stop had ended at the time the officer last mentioned the issue of insurance.

Next, Kelley relies on *State v. Aguirre*, 141 Idaho 560, 112 P.3d 848 (Ct. App. 2005) to support the proposition that, even if the purpose of the stop had not concluded, his detention became illegal because the officer abandoned the traffic violation investigation at 12:22:25 a.m. and began a drug investigation without reasonable suspicion to detain him on that basis. In *Aguirre*, officers stopped Aguirre for failing to stop when entering the roadway. By the time officers stopped Aguirre, they had checked for warrants and were given other pertinent information from dispatch. Upon informing Aguirre of the purpose of the stop, the officers obtained Aguirre's license and registration. However, instead of pursuing the issuance of the citation, the officer asked if anything illegal was in the vehicle and asked for consent to search. When denied consent, the officer employed a drug dog around the vehicle. Though other officers were at the scene, none of the officers continued the initial purpose of the stop; rather, the officers all pursued the drug investigation. This Court noted that the "purpose that justified the stop--the issuance of a traffic citation--was immediately abandoned." *Id*. at 564, 112 P.3d at 852. We therefore held that the use of the drug dog impermissibly extended the duration of the detention. *Id*.

Kelley's reliance on *Aguirre* is misplaced. In *Aguirre*, the officers abandoned the investigation into the traffic offense to pursue a drug investigation that was not supported by reasonable suspicion. Here, the officer had sufficient information that gave rise to the officer's

---

officer did not immediately issue a citation or warning for the traffic violation or the failure to provide proof of insurance, the purpose of the stop ended at the last mention of insurance.

However, *Gutierrez* is inapposite to Kelley's case. In *Gutierrez,* the purpose of the stop had ended when the officer conducted a records check, found nothing, and then issued the warning citation before further detention to allow for the improper drug investigation. Unlike the officer in *Gutierrez*, the officer here had not yet returned to his police car to run Kelley's information, nor did he make any indication about giving a warning for either the traffic violation or failure to provide proof of insurance. Rather, the record shows that the officer was still pursuing reasonable inquires as the encounter with Kelley progressed.

suspicions before the 12:22:25 a.m. time that Kelley contends that the stop was impermissibly extended. As we have already explained above, the record shows that Kelley had lied about the Oregon stop (12:20:26 a.m.) and given confusing travel plans (12:20:53 a.m.) before the time that Kelley contends the purpose of the stop was abandoned. Additionally, during their conversation the officer was observing Kelley and would have noted Kelley's bloodshot eyes. This sequence of events belies Kelley's argument. Although, the district court did not specifically address the chronology of its findings, after an independent review of the record, we conclude that Kelley's misinformation, confusing travel plans, and bloodshot eyes provided the officer reasonable suspicion that Kelley may have been involved in drug-related activity before 12:22:25 a.m. Therefore, the officer was justified in extending the stop beyond the last mention of the proof of insurance at 12:22:25 a.m.

Moreover following the last mention of insurance, the officer had reasonable suspicion to continue Kelley's detention allowing for the drug dog search. Immediately following the officer's last question about insurance, the officer conducted an eye tremor test which indicated that Kelley had recently used marijuana. The officer inquired into Kelley's marijuana use and whether there was marijuana in the vehicle. The officer asked for consent to search the vehicle. Kelley refused but again volunteered false information about the Oregon stop. Thereafter, while Kelley and the officer further discussed Kelley's travel plan details, Kelley was asked to step out of the vehicle, at which time empty beer cans were discovered. Within eight minutes of the beginning of the stop, the drug dog commenced the exterior sniff search and subsequently alerted to an odor of a controlled substance. We conclude that, while the original purpose of the stop was for a traffic infraction, the purpose of the stop reasonably extended into a drug investigation as the encounter with Kelley progressed. Therefore, based on a review of the totality of the circumstances, Kelley has failed to show that the district court erred in finding that the officer possessed reasonable suspicion sufficient to allow for the drug dog search.

## C.    Probable Cause to Search the Trunk

Kelley argues that the district court erred in finding that there was sufficient probable cause to search the trunk of the vehicle without a warrant. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*,

11

127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The state may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* One such exception is the automobile exception, under which police officers may search an automobile and the containers within it when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 153 (1925); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). The permissible scope of a warrantless automobile search "is defined by the object of the search and the places in which there is probable cause to believe it will be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). Probable cause is a flexible, common sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983); *State v. Johnson*, 152 Idaho 56, 61, 266 P.3d 1161, 1166 (Ct. App. 2011). When a reliable drug dog indicates that a lawfully stopped automobile contains the odor of a controlled substance, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *Gallegos*, 120 Idaho at 898, 821 P.2d at 953; *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). The United States Supreme Court has held that probable cause to believe a vehicle contains evidence of criminal activity authorizes a search of any area of the vehicle in which the evidence might be found. *Arizona v. Gant*, 556 U.S. 332, 347 (2009); *Ross*, 456 U.S. at 820-21.

The district court held that the officer had probable cause to search the vehicle's passenger and trunk compartments. Kelley does not contest that there was probable cause to search the passenger compartment of the vehicle given the drug dog's detection of a controlled substance odor at both the front driver and passenger doors. He instead argues that the drug dog's alert did not provide probable cause to search the trunk. Specifically, his argument is premised on the assertion that the officer's search of the trunk occurred simultaneously with the placement of the dog into the vehicle and, consequently, probable cause could not have been established to search the trunk area itself at the time of the search. Kelley contends that *State v. Schmadeka*, 136 Idaho 595, 38 P.3d 633 (Ct. App. 2001) supports this argument.

In *Schmadeka*, the search was not predicated upon a drug dog's alert. Rather, a police officer detected the odor of burning marijuana coming from the passenger compartment of a

12

vehicle during a traffic stop. The officer then searched the entire vehicle. He found no marijuana but found precursors of methamphetamine production in the trunk. After the driver was charged with a drug offense, he filed a suppression motion, contending that probable cause to search the trunk was lacking. The trial court denied the motion. The question addressed in *Schmadeka* was the scope of the allowable search under the automobile exception when probable cause was based upon an odor of burnt marijuana coming from the passenger compartment. The permissible scope of a warrantless automobile search is defined by the object of the search and the places in which there is probable cause to believe it will be found. *Ross*, 456 U.S. at 824; *Schmadeka*, 136 Idaho at 598, 38 P.3d at 636. The existence of probable cause to search the interior of a car is not necessarily sufficient to justify a search of the car's trunk. *Schmadeka*, 136 Idaho at 599, 38 P.3d at 637. This Court joined the courts of a number of other jurisdictions, holding that an officer's detection of an odor of burnt marijuana coming from the passenger compartment of a car provided probable cause to search the passenger compartment but did not provide probable cause to search the car's trunk. *Id.* at 599-600, 38 P.3d at 637-38. Our decision was predicated upon the commonsense distinction between the odor of burnt marijuana in the passenger compartment, which alone is not indicative of marijuana in the trunk, and an officer's detection of the odor of raw marijuana, which may justify a search of the entire vehicle. *Id.* at 600, 38 P.3d at 638; *see also United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000) (distinction is premised on the commonsense proposition that it is unreasonable to believe people smoke marijuana in the trunks of cars and the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana).

Here, the district court distinguished *Schmadeka* from this case. The result in *Schmadeka* stemmed from that the officer's determination that the marijuana he smelled had been burned. The *Schmadeka* rationale was that marijuana is not likely to be smoked in a vehicle trunk, nor is burnt marijuana likely to be transported in a vehicle trunk. The same common sense reasoning does not hold true for a drug dog alert, which communicates no distinction between burnt marijuana and raw marijuana or other drugs to which the dog has been trained to alert. Here, no odors were detected by the officer. The record indicates that the drug dog alerted to the presence of a controlled substance odor. According to the drug dog's handling officer, the drug dog was trained to alert to the presence of multiple odors including marijuana, methamphetamine, heroin,

and cocaine. Regarding marijuana detection, the drug dog was trained to alert to the odor of both burnt and raw marijuana. Notably, the record shows that the rear seat was partially laid down, exposing the trunk compartment which would have allowed the air to flow to and from the trunk area. The handling officer testified that the drug dog alerted after sniffing the air through the open windows on the driver and passenger sides. Thus, unlike the officer's odor recognition in *Schmadeka*, the drug dog's alert on the vehicle's open front windows did not logically limit probable cause to the passenger compartment. Once the drug dog was placed in the vehicle, the dog immediately entered the backseat area and alerted to areas between and under the backseat cushions toward rear of the vehicle. The handling officer testified he believed this to mean that the odor was coming from the trunk or from behind the cushion.

Although no prior case has directly addressed this issue, Idaho case law has not imposed limits on the area of a vehicle that is searchable based upon a drug dog alert. *See State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012) (drug dog's alert on the exterior of a vehicle is sufficient, in and of itself, to establish probable cause for a warrantless search of the interior); *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999) (an officer's investigation at the scene of a stopped automobile can ripen into probable cause as soon as a drug detection dog alerts on the exterior of the vehicle, justifying a search of the vehicle without the necessity of obtaining a warrant); *Gallegos*, 120 Idaho at 898, 821 P.2d at 953 (warrantless search of an automobile was proper when an officer's vehicle stop ripened into probable cause after a drug dog alerted on the rear exterior of the vehicle); *State v. Buck*, 155 Idaho 828, 829, 317 P.3d 725, 726 (Ct. App. 2014) (officer had probable cause to believe that there were drugs in the automobile and searched it without a warrant after a drug dog indicated to a controlled substance odor within an automobile); *Gibson*, 141 Idaho at 281, 108 P.3d at 428 (officer had probable cause to believe that there were drugs in the automobile and conducted a warrantless search after a drug dog indicated that an automobile contained a controlled substance odor). Kelley has not demonstrated that the drug dog's alert provided probable cause to search only the

14

localized area of the car where the drug dog indicated. We decline to impose such a limitation in this case.[3]

## IV.

## CONCLUSION

Kelley has failed to show that I.C. § 49-808(2) is void for vagueness as applied to his conduct and therefore, the officer possessed reasonable suspicion to conduct the traffic stop. The officer further possessed reasonable suspicion to extend the duration of that stop to include additional investigative questions and drug dog search. Thus, there was probable cause to search the trunk. Therefore, the district court did not err in denying Kelley's motion to suppress evidence. Accordingly, Kelley's judgment of conviction for trafficking in marijuana is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.

---

[3] Additionally, Kelley predicates his argument on the chronology of the search. Specifically, he asserts that the trunk search was simultaneous with the drug dog's placement inside the vehicle. He contends that probable cause was not established at that time to justify a trunk search because there was nothing to indicate that there was an odor emanating from the trunk. As we have stated, we decline to limit searches to only the localized areas where a drug dog alerts. However, notwithstanding this holding, the record in this case belies Kelley's argument. Video evidence indicates that the two events, (the placement of the dog into the vehicle and the trunk search) were not simultaneous and were separated by approximately two minutes. Moreover, Kelley does not contest the district court's finding that, once inside the vehicle, the dog immediately entered the backseat and alerted to the seat back crevice and around the seat cushion at the floorboard nearest the rear of the vehicle. The video confirms that the dog was in the backseat tracing the detected odor before the trunk was opened. The handling officer testified that he believed that the drug dog was alerting to an odor in the trunk area or underneath the seat. Therefore, Kelley has failed to show that officers did not have probable cause at the time the trunk was searched.