**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47913**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 25, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOHN ALLAN LOEWE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Rosemary Emory, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Rockne K. Lammers, Jerome County Public Defender, Jerome, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

John Allan Loewe appeals from his judgment of conviction for possession of a controlled substance. Loewe argues the district court abused its discretion in denying his motion to suppress because reasonable and articulable suspicion did not support the traffic stop. Because reasonable and articulable suspicion supported the traffic stop, the district court did not err and the judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Alajbegovic and Sergeant Clark were dispatched to a local store to respond to a report of a possible driver who was under the influence. Dispatch relayed the information it received from the reporting party to the responding officers; a man, who drove a maroon Buick, was acting intoxicated, possibly from drugs, and was stumbling and dropping items inside the

1

store. Alajbegovic and Clark arrived separately at the location and parked their patrol cars where they had a clear line of sight to observe the maroon Buick, which was unoccupied.

The officers observed Loewe exit the store and approach the Buick. Loewe was carrying an assortment of items purchased from the store and repeatedly dropping and picking up the items. The officers believed that Loewe's body movements were unnatural and twitchy, like he did not have control of his body. During this time, the reporting party came out of the store and approached Clark's patrol car. She told Clark that she was an employee at the store and described her concerns about Loewe's behavior, which was nearly identical to the information the officers received from dispatch.

Alajbegovic observed Loewe for five to ten minutes, during which Loewe repeatedly got into and out of his car. Eventually Loewe got into his car and drove out of the parking lot. The officers followed Loewe as he drove approximately one block before turning into his apartment complex. Alajbegovic was directly behind Loewe and noticed that Loewe's driving pattern appeared uneven. Loewe executed multiple choppy turns and repeatedly stepped on the brake.

Alajbegovic initiated a traffic stop. After speaking with the officers, Loewe disclosed that he smoked methamphetamine earlier that morning. Loewe was placed under arrest for driving under the influence of drugs or intoxicating substances. During the subsequent search of Loewe's person and car, the officers discovered a clear plastic baggie with a white, crystalline substance and a scale with white, powdery residue.

In two separate cases arising out of the same incident, the State charged Loewe with driving under the influence, a misdemeanor, and possession of a controlled substance, a felony, and the district court consolidated the cases. Loewe filed a motion to suppress all evidence seized as a result of his traffic stop, arguing that Alajbegovic initiated the stop without probable cause or reasonable suspicion, in violation of the Fourth Amendment. The district court held a suppression hearing in which both Alajbegovic and Clark testified. The district court denied Loewe's motion, finding that the totality of the circumstances known to the officers, including Loewe's behavior in the parking lot, his driving pattern, and the information provided by dispatch and the reporting party, created reasonable suspicion that Loewe was intoxicated or under the influence of drugs. The district court found that there was not reasonable suspicion or probable cause to initiate the traffic stop based solely upon Loewe's driving behavior.

The parties entered into a plea agreement and Loewe entered a conditional guilty plea to the charges, reserving his right to appeal the denial of his motion to suppress. Loewe timely appeals from his judgment of conviction for possession of a controlled substance.[1]

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Loewe argues the district court erred in denying his motion to suppress by considering the report to dispatch and Clark's testimony when evaluating the totality of the circumstances and by finding the totality of the circumstances justified the traffic stop. In response, the State argues the district court did not err in considering the dispatch report and Clark's testimony or in finding that reasonable suspicion justified the traffic stop, but did err in finding that there was not reasonable suspicion or probable cause to initiate the traffic stop based solely upon Loewe's driving behavior.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws or that either the vehicle or an occupant is subject to detention in connection with the violation of other laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Davis*, 139 Idaho 731, 734, 85

---

[1] Loewe concedes that his appeal is timely only from his judgment of conviction for possession of a controlled substance. Accordingly, we will not address his judgment of conviction for driving under the influence.

P.3d 1130, 1133 (Ct. App. 2003); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

"Whether an officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances--the collective knowledge of all those officers and dispatchers involved." *State v. Baxter*, 144 Idaho 672, 678, 168 P.3d 1019, 1025 (Ct. App. 2007); *see also State v. Widner*, 155 Idaho 840, 844, 317 P.3d 737, 741 (Ct. App. 2013); *State v. Van Dorne*, 139 Idaho 961, 964, 88 P.3d 780, 783 (Ct. App. 2004). "When gauging whether information known to an officer justified reasonable suspicion, we consider the totality of the circumstances rather than viewing individual facts in isolation." *State v. Kelley*, 159 Idaho 417, 424, 361 P.3d 1280, 1287 (Ct. App. 2015). Even where any individual fact is consistent with innocent conduct, a court may nonetheless conclude that reasonable suspicion exists when the facts are considered together. *Id.* "In other words, the whole may be greater than the sum of its parts because the officer may consider the import of one fact in light of another fact." *Id.*

A citizen's report may supply the reasonable suspicion necessary for the officer to initiate the stop. *State v. Larson*, 135 Idaho 99, 101, 15 P.3d 334, 336 (Ct. App. 2000). Therefore, "[i]nformation from a citizen, relayed to officers via radio by a police dispatcher, may provide sufficient grounds for an officer to initiate an investigative detention." *Baxter*, 144 Idaho at 677, 168 P.3d at 1024. Whether information from such a source is sufficient to create reasonable suspicion depends upon the content and reliability of the information presented by the source, including whether the informant reveals her identity and the basis of her knowledge. *Larson*, 135 Idaho at 101, 15 P.3d at 336. Thus, while an anonymous tip, standing alone, is generally not enough to justify a stop, when the information from an anonymous tip bears sufficient indicia of reliability or is corroborated by independent police observations, it may provide the necessary justification. *Id.* Alternatively, where the information comes from a known citizen informant, the citizen's disclosure of her identity, or facts that make her identity readily ascertainable, is generally

4

deemed adequate to show veracity and reliability because such identifying information carries the risk of accountability if the allegations turn out to be fabricated. *Id.* at 102, 15 P.3d at 337.

Here, the district court found that the officers responded to a report that a man was acting intoxicated, possibly from drugs, at a local store. The report gave the location of the man and a description of his car, and when the officers responded to the location, they saw a car that matched the description. The district court recognized there was no evidence about whether the reporting party provided dispatch with her identity. Nonetheless, the district court found that the report carried with it sufficient indicia of reliability because the person who made the report to dispatch--the store employee--immediately approached the officers upon their arrival to the scene. The reporting party conveyed to Clark nearly identical information as the dispatch report; a man inside was stumbling around, had no balance, kept dropping items, and she believed he was under the influence of drugs. The officers observed Loewe display similar behavior in the parking lot, including twitchy, jerky, and involuntary muscle movements, inability to hold items, and severe lack of balance. Both officers testified this was consistent with the use of intoxicating substances, and Clark specifically believed these behaviors to be consistent with someone under the influence of methamphetamine. While the officers were observing Loewe, he got into his car and drove away from the parking lot. The officers followed and, during that time, Alajbegovic observed Loewe execute three choppy turns and repeatedly step on his brakes. Although neither behavior was a violation of Idaho's driving laws, the behavior further raised Alajbegovic's suspicions. When considering the totality of the circumstances, the district court found there was reasonable suspicion that Loewe was intoxicated or under the influence when Alajbegovic conducted the traffic stop.

Loewe argues the district court erred by considering the information provided to the officers by dispatch in its assessment of the totality of the circumstances because there was not sufficient evidence presented for the report to have sufficient content and reliability. Loewe argues there was no evidence that the reporting party revealed her identity to dispatch, was the same person who approached the officers upon their arrival to the scene, or had any basis of knowledge for suggesting that Loewe seemed under the influence of drugs. This argument is unconvincing because the report carried with it sufficient indicia of reliability.

Although there was no evidence about whether the reporting party disclosed her identity to dispatch, both Alajbegovic and Clark testified that the employee who approached the officers upon

5

their arrival to the scene was the reporting party and there was no evidence presented to challenge their testimony or dispute the district court's conclusion to that effect. As a result, substantial and competent evidence supports the district court's finding that the employee who approached the officers was the reporting party. Thus, even if the reporting party did not disclose her identity when she made the report to dispatch, she immediately disclosed her identity upon the officers' arrival, lending sufficient veracity and reliability to the dispatch report.

However, even if the report to dispatch had been anonymous, the information in the report was corroborated by independent police observations. The dispatch report relayed that the caller witnessed a man, who drove a maroon Buick, acting intoxicated, possibly from drugs, and stumbling and dropping items while in the store. Upon arrival to the scene, the officers were able to personally confirm this information. They witnessed Loewe exit the store, moving in a manner consistent with being under the influence of drugs, carrying various items which he repeatedly dropped, and enter a maroon Buick.

Further, the foundation of the reporting party's knowledge of how an individual acts when under the influence of drugs is inconsequential because the district court found that the officers were trained in detecting drug impairment, observed Loewe, and based on those observations, concluded that Loewe's behaviors were consistent with drug intoxication. Thus, even if the dispatch report constituted an anonymous tip from an individual with no disclosed training in detecting drug intoxication, when coupled with independent police observations, the report provided reasonable suspicion for the stop.

Second, Loewe argues that the district court erred by considering Clark's testimony when assessing the totality of the circumstances, as it was Alajbegovic, not Clark, who initiated the traffic stop. Loewe argues that because the reporting party only spoke to Clark upon the officers' arrival to the scene and Clark did not relay the information to Alajbegovic, this information cannot be used to support the traffic stop. Although at the suppression hearing the officers provided inconsistent testimony as to whether Clark relayed the information given to him by the reporting party to Alajbegovic, such inconsistencies are of no significance. As previously noted, Idaho courts have consistently held that reasonable suspicion is assessed by the collective knowledge of all officers and dispatchers involved, not simply the officer who initiated the stop or detention. As such, the district court did not err by considering Clark's testimony when assessing the totality of the circumstances.

6

Finally, Loewe argues that because the officers did not detain him before he began driving and he did not violate any traffic laws while driving, reasonable suspicion did not support the stop. Loewe's argument suffers from two flaws. First, Loewe seems to assert that if there was reasonable suspicion to detain him before he began driving, the officers should have detained him at that point. Prior to Loewe driving, the officers had responded to a report of a possible driver who was under the influence and corroborated much of the report through their personal observations. The officers witnessed Loewe show unnatural and twitchy behaviors; appearing as though he was not in control of his body. They testified that from their training and experience, they determined Loewe's behaviors were indicative of someone under the influence of drugs, specifically methamphetamine. Alajbegovic testified that he did not immediately pursue a detention because he wanted to continue observing Loewe and because Loewe repeatedly got in and out of his car during the period of observation, Alajbegovic did not know when Loewe was going to begin driving. However, once Loewe began to drive, Alajbegovic testified that he started following Loewe "to make a stop." There is nothing that requires an officer to initiate an investigatory detention immediately upon having reasonable suspicion of criminal activity, and the officers' decision not to detain Loewe immediately does not indicate that the officers lacked reasonable suspicion to do so.

Second, Loewe incorrectly asserts that if Loewe did not violate any traffic laws prior to the stop, his driving behaviors, choppy turns, and repetitive braking should not be "piggybacked" onto Loewe's behavior in the store parking lot. However, this is precisely how a totality of the circumstances analysis is conducted; a fact that is entirely consistent with innocent or noncriminal behavior may nonetheless give rise to reasonable suspicion when considered in light of other facts available to the officer. *Kelley*, 159 Idaho at 424, 361 P.3d at 1287. Therefore, Loewe's choppy driving behavior may be considered when assessing the totality of the circumstances to determine whether there was reasonable suspicion to support the traffic stop.

In sum, prior to initiating the stop, the officers responded to a dispatch report of a driver who was possibly under the influence of drugs. The reporting party spoke to Clark, and both officers corroborated the behavior reported by observing Loewe in the parking lot. The officers then followed Loewe, and Alajbegovic witnessed Loewe drive in a legal, but choppy pattern. Through their training and experience, the officers believed Loewe's behavior was indicative of someone under the influence of drugs. Taken together, the totality of the circumstances gave rise

7

to reasonable suspicion that Loewe was under the influence of drugs at the time of the traffic stop. Because we find the traffic stop was supported by reasonable suspicion that Loewe was driving under the influence of drugs, we need not address the State's argument that the district court erred by finding independent, reasonable suspicion of a different traffic violation based solely on Loewe's driving behavior did not support the stop.

## IV.

## CONCLUSION

Reasonable and articulable suspicion that Loewe was driving under the influence of drugs supported the traffic stop. Accordingly, the district court did not err in denying Loewe's motion to suppress and the judgment of conviction is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.